# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KAY EKEYA**, | Case No. 3:17-cv-195-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **SHRINERS HOSPITAL FOR CHILDREN, PORTLAND**, a Colorado Non-Profit Corporation, and **JOHN CRAIG PATCHIN**, an individual, | |
| Defendants. | |

Kyann Kalin and Peter Stutheit, STUTHEIT KALIN LLC, 308 SW First Ave., Suite 325, Portland, OR 97204. Of Attorneys for Plaintiff.

John M. Kreutzer and Jessica E. Wilcox, SMITH FREED & EBERHARD PC, 111 SW Fifth Ave., Suite 4300, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Kay Ekeya ("Ekeya") asserts employment-related claims under Oregon law against her former employer, Shriners Hospital for Children, Portland ("Shriners Portland"), and the Hospital Administrator of Shriners Portland, John C. Patchin ("Patchin") (collectively, "Defendants"). Ekeya alleges that Shriners Portland retaliated against her by terminating her employment after she reported that her immediate supervisor had violated patient privacy rights

by allowing a news reporter into the hospital to take and publish photographs in areas not generally open to the public. Ekeya also alleges that Patchin aided and abetted the unlawful retaliation by Shriners Portland. Ekeya is a citizen of the State of Washington, Shriners Portland is a Colorado non-profit corporation, and Patchin is a citizen of the State of Oregon. Plaintiff commenced this action in state court in Oregon, and Defendants timely removed the case to federal court, asserting diversity jurisdiction. In an effort to avoid the forum defendant rule, which prohibits removal when a defendant is a citizen of the forum state, Defendants argue that Plaintiff cannot state a colorable claim against Patchin and, thus, he has been fraudulently joined. From this, Defendants argue that Patchin's presence does not preclude removal. Before the Court are Plaintiff's motion to remand, arguing that Patchin has not been fraudulently joined, and Defendants' motion to dismiss Plaintiff's claim against Patchin.

## STANDARDS

### A. Removal, the Forum Defendant Rule, and Remand

A civil action generally may be removed from state court to federal court if the federal district court would have had original, subject matter jurisdiction over the case. 28 U.S.C. § 1441(a). Subject matter jurisdiction may be based on either federal question jurisdiction or diversity jurisdiction. 28 U.S.C. §§ 1331, 1332. Diversity jurisdiction exists over all civil actions when the amount in controversy exceeds $75,000 and there is complete diversity among all plaintiffs and defendants. 28 U.S.C. § 1332(a)(1). "[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original). A civil action otherwise removable on the basis of diversity jurisdiction, however, "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2); *see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005)

("Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, *and no defendant is a citizen of the forum State.*") (emphasis added). This latter clause is known as the "forum defendant rule."

A motion to remand is the proper procedure for a plaintiff to use when challenging removal. 28 U.S.C. § 1447; *see also Moore-Thomas v. Ala. Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). Because federal courts are courts of limited jurisdiction, the removal statute is strictly construed, and courts resolve any doubt in favor of remand. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). In other words, there is a "strong presumption" against removal jurisdiction. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citation and quotation marks omitted). The party seeking removal bears the burden of establishing that removal is proper. *Moore-Thomas*, 553 F.3d at 1244.

## B. Fraudulent Joinder

When considering diversity jurisdiction, an exception "to the requirement of complete diversity is where a nondiverse defendant has been 'fraudulently joined.'"[1] *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). If a defendant has been fraudulently joined, "the district court may ignore the presence of that defendant for the purpose of establishing diversity." *Hunter*, 582 F.3d at 1042. There is, however, a "general presumption against fraudulent joinder." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). Further, a defendant bears a heavy burden of demonstrating fraudulent joinder by "clear

---

[1] As courts and commentators often point out, the phrase "fraudulent joinder" is a "bit misleading because the doctrine requires neither a showing of fraud nor joinder in one sense." 16 *Moore's Federal Practice* § 107.14[2][c][iv][A], at 107-58 (2011). "Fraudulent joinder does not impugn the integrity of Plaintiffs or their counsel and does not refer to an intent to deceive." *Dacosta v. Novartis AG*, 180 F. Supp. 2d 1178, 1181 (D. Or. 2001).

and convincing evidence." *Id.* Thus, a removing defendant asserting fraudulent joinder must overcome "both the strong presumption against removal jurisdiction and the general presumption against fraudulent joinder." *Hunter*, 582 F.3d at 1046 (citation and quotation marks omitted).

A "joinder is fraudulent when a plaintiff's failure to state a cause of action against the resident defendant is obvious according to the applicable state law." *Allen v. Boeing Co.*, 784 F.3d 625, 634 (9th Cir. 2015); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). "[I]f there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Hunter*, 582 F.3d at 1046 (quotation marks and citation omitted) (emphasis added).

In many circumstances, a court will consider only the plaintiff's pleadings to determine removability. When fraudulent joinder is at issue, however, a court may go "somewhat further." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998). A defendant seeking removal is "entitled to present the facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339. Thus, when determining whether there has been fraudulent joinder, a court may conduct a "summary inquiry" that goes beyond the pleadings. *Allen*, 784 F.3d at 634. Such an inquiry, however, "is appropriate only to identify the presence of discrete and *undisputed facts* that would preclude plaintiff's recovery against the in-state defendant." *Id*. (quoting *Hunter*, 582 F.3d at 1044 (quoting *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004))) (emphasis added). "[T]he inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.*

## C.  Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the legal sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND[2]

Shriners Portland is part of a non-profit organization that operates 22 hospitals in three countries, including the United States. Plaintiff, Ekeya, worked in the Shriners Portland hospital

---

[2] These background facts are derived from Plaintiff's complaint, the declarations and exhibits submitted by the parties in connection with Plaintiff's motion to remand and Defendants' assertion of fraudulent joinder, and concessions made by counsel at oral argument for purposes of the pending motions.

for almost 16 years, from October 2000 until her employment was terminated on August 25, 2016. Throughout her employment, Ekeya consistently received favorable reviews and yearly raises. In March 2016, Ekeya received a promotion from Public Relations Specialist to Public Relations Manager.

In July 2016, the Hospital Administrator for Shriners Portland, Patchin, created a new position of Director of Business Development at Shriners Portland. Patchin appointed Davene Dietzler-Marihart ("Dietzler-Marihart") to that job. Previously, Dietzler-Marihart had reported directly to Ekeya, and Ekeya had reported directly to Patchin. After Patchin created the new position for Dietzler-Marihar, Ekeya now reported directly to Dietzler-Marihart and Dietzler-Marihart reported directly to Patchin. Ekeya was not pleased with this reorganization.

On July 22, 2016, Rhonda Smith ("Smith"), the Director of Human Resources for Shriners Portland, met with Patchin and Dietzler-Marihart. According to Smith's declaration, Smith, Patchin, and Dietzler-Marihart discussed Ekeya's unwillingness to work collaboratively within the new structure of the hospital's business development department. Both Smith and Dietzler-Marihart expressed their views to Patchin that it was in the hospital's best interest to terminate Ekeya's employment. As explained in Smith's Declaration, Smith "recommended that we should attempt to get a *severance exception and release*," and both Patchin and Dietzlier-Marihart "agreed with my recommendation." ECF 14 at 2 (¶ 3) (emphasis added).

After that meeting, but still on July 22, Smith sent an email to Kathy Dean, who worked in Human Resources for the larger Shriners organization. Dean was based in in Florida. Smith asked Dean for approval to provide a severance package to Ekeya. Smith understood that Shriners did not typically provide severance for any reason other than a "position elimination" and that this was not a position elimination situation. *Id*. at 5. In her email, Smith told Dean:

Please see the attached [Request for Exception]. This employee has served the hospital well for almost 16 years. We do, however, feel it is best for the hospital if we part ways at this juncture. There isn't any history of performance problems, in fact, she was just promoted to PR Manager. It is a matter of her ability to accept the new reporting structure. It is a morale issue as well as a risk to the successful implementation of some very important projects (Providence, for one). We feel the distraction of dealing with a significant personnel issue sets the Business Development office up for failure.

Thank you for considering this request. We would like to act on the termination decision as quickly as possible.

*Id*. at 6.

Dean responded promptly, stating: "I take it this is not a job elimination rather a 'buy out' to move forward?" *Id*. at 5. The phrase "buy out" appears to refer to the recommendation described by Smith in her declaration that "we should attempt to get a severance exception and release." Smith replied to Dean by confirming that this was "not a position elimination; but the position changed appreciably." *Id*. Smith also told Dean:

Kathy, I know we typically do not provide a severance for anything other than a position elimination. However, *if this employee stays* it will be very detrimental to a new manager who needs to immediately get her arms around some very important initiatives.

*Id.* (emphasis added).

The phrase "if this employee stays," with its conditional language, is significant to the matter pending before the Court. When viewed in the light most favorable to Ekeya, this phrasing indicates that when Smith sent her response to Dean on July 22, after having met with Patchin and Dietzler-Marihart, Smith understood that there was still a possibility that Ekeya might stay. Indeed, Smith was asking the Shriners organization for an exception to the policy of not giving severance other than for a position elimination so that Shriners Portland might be able to offer Ekeya severance in exchange her release of claims, which Smith, Patchin, and Dietzler-

Marihart had discussed earlier that day.[3] The Shriners organization, however, never approved the severance exception for Ekeya, and Ekeya did not sign any release. By late August 2016, Ekeya was still employed at Shriners Portland.

Earlier in August 2016, Dietzler-Marihart allowed a news reporter into areas of the hospital closed to the public. Afterward, the news organization for which the reporter worked published online a photograph showing a portion of the hospital's non-public areas. Ekeya believed in good faith that Dietzler-Marihart's conduct violated federal law (specifically, the Health Insurance Portability and Accountability Act ("HIPAA")), state law, and Shriners' privacy policies. Plaintiff reported this violation to a Shriners privacy officer and to a Senior Regional Director of Public Relations for Shriners. On August 22, 2016, in the normal course of her job duties, Plaintiff attended the monthly meeting of the Board of Governors of Shriners Portland. Patchin and Dietzler-Marihart also attended that meeting. During the meeting, Ekeya reported Dietzler-Marihart's violation to the Board. Presumably, Deitzler-Marihart, Smith, and Patchin were not pleased with Ekeya's conduct.

Two days later, Shriners Portland prepared an Employee Counseling Report, dated August 24, 2016. ECF 8 at 4. Under the heading "Action to be Taken," the box labeled "Discharge" was marked and the following statement was written: "Recommendation to be reviewed by Human Resources before discussing with Employee." *Id*. Under the heading "Violation," the report reads: "Insubordination: disrespectful behavior toward supervisor or manager." *Id*. The report also states the following about Ekeya: "Several hospital representatives

---

[3] Although Patchin states in his declaration that "I made the decision to terminate Plaintiff Kay Ekeya's employment on July 22, 2016," ECF 15 at 2 (¶ 4), viewing the facts in the light most favorable to Ekeya, it appears that on that day Patchin may have made the decision to request a severance exception for Ekeya and, if allowed, offer Ekeya severance in exchange for her release of employment-related claims. Because Patchin's deposition has not yet been taken, a more complete inquiry into his precise decision will have to wait.

have had conversations with you," but you appear to have an "unwillingness to work collaboratively in the current environment." The narrative ends: "It has become increasingly apparent you have decided not to participate as a team player. Your employment is terminated effective August 25, 2016." The form is signed by Ekeya as the affected employee and by Smith as the "supervisor/witness." Both Ekeya's signature and Smith's signature are dated August 25, 2016.

## DISCUSSION

Ekeya asserts two claims in her lawsuit, which was originally filed in state court. As her first claim, Ekeya alleges that Shriners Portland retaliated against her, in violation of Or. Rev. Stat. § 659A.030(1)(f) and Or. Rev. Stat. § 659A.199(1), by terminating her employment shortly after, and because, she reported and opposed Dietzler-Marihart's unlawful conduct. As her second claim, Ekeya alleges that Patchin fostered a pattern and practice of retaliation and aided and abetted the unlawful retaliation by Shriners Portland against Ekeya, in violation of Or. Rev. Stat. § 659A.030(1)(g). Defendants removed the action to federal court, notwithstanding the fact that Patchin is a citizen of the forum state. In an effort to avoid the forum defendant rule, Defendants assert that Patchin had been fraudulently joined. Ekeya has moved for remand, and Defendants have moved to dismiss Patchin. The principal questions before the Court are whether the fraudulent joinder doctrine applies in the context of the forum defendant rule and, if so, whether Patchin was fraudulently joined and should be dismissed. In addition, Ekeya seeks an award of attorney fees if she prevails on her motion to remand.

### A.  Whether Fraudulent Joinder Avoids the Forum Defendant Rule

In some cases, forum selection may be an important strategic decision for the parties. In the absence of complete diversity and the requisite amount in controversy, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded

complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, in the absence of complete diversity, the plaintiff is the "master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law." *Id*.

An out-of-state defendant may desire to avoid potential prejudice resulting from being sued in state court by a local plaintiff. Indeed, the primary reason why Congress provided for removal to federal court based on diversity jurisdiction is to protect out-of-state defendants from such possible prejudice. *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 940 (9th Cir. 2006). "The need for such protection is absent, however, in cases where the defendant is a citizen of the state in which the case is brought." *Id*. The purpose of the forum defendant rule, therefore, is to allow "the plaintiff to regain some control over forum selection by requesting that the case be remanded to state court" when it has been removed to federal court by a local defendant invoking diversity jurisdiction but facing no potential out-of-state prejudice. *Id*.

One strategy that may be available to a plaintiff who desires to remain in state court is to include in the lawsuit a nondiverse defendant. This strategy is intended to defeat removal by creating a lack of complete diversity. When there is no possibility, however, that a state court would find that the complaint states a cause of action against the nondiverse defendant, that defendant likely will be dismissed from the lawsuit before trial, thus presenting to any remaining out-of-state defendants the precise risk of prejudice that removal was intended to prevent. *See Hunter*, 582 F.3d at 1046. This is the primary reason for the fraudulent joinder doctrine.

Another strategy that may be available to a plaintiff who desires to remain in state court is to include in the lawsuit an in-state defendant. This strategy is intended to defeat removal by operation of the forum defendant rule. As with the inclusion of a nondiverse defendant, when there is no possibility that a state court would find that the complaint states a cause of action

against the in-state (or resident, or forum) defendant, that defendant likely will be dismissed from the lawsuit before trial, thus presenting to any remaining out-of-state defendants the precise risk of prejudice that removal was intended to prevent. This leads to the question of whether the fraudulent joinder doctrine applies to provide such defendants with relief from the forum defendant rule even when there is complete diversity, just as it applies to provide defendants with relief from the requirement of complete diversity. At the level of the federal appellate courts, this appears to be an open question.

In *Morris v. Nuzzo*, 718 F.3d 660 (7th Cir. 2013), the Seventh Circuit observed:

> The question before us is whether the district court erred in applying the fraudulent joinder doctrine to Nuzzo, whose presence triggers the forum defendant rule but does not compromise the parties' complete diversity. In other words, we are asked to determine whether the fraudulent joinder doctrine creates an exception to the forum defendant rule. It does not appear that any court of appeals has answered this question. The few district courts that have decided the issue are split. *See, e.g., Yellen v. Teledne Continental Motors, Inc.*, 832 F. Supp. 2d 490 (E.D. Pa. Dec. 6, 2011) (fraudulent joinder doctrine applies to a diverse forum defendant); *Sargent v. Cassens Corp.*, No. 06 CV 1042, 2007 WL 1673289 (S.D. Ill. June 7, 2007) (same); *but see Yount v. Shashek*, 472 F. Supp. 2d 1055 (S.D. Ill. 2006) (fraudulent joinder doctrine does not apply to a diverse forum defendant); *Davenport v. Toyota Motor Sales*, No. 09 CV 532, 2009 WL 4923994 (S.D. Ill. Dec. 14, 2009) (same).

*Id.* at 666. Later in that case, the Seventh Circuit declined to resolve this question, commenting:

> Ultimately, we think it a very close question whether the fraudulent joinder doctrine ought to extend to diverse resident defendants, and we are reluctant to rule definitively on the issue today absent a more thorough and more able presentation of the relevant balance of interests described above. In any event, we are convinced that Nuzzo was not fraudulently joined

*Id.* at 670-71.

The situation in *Morris v. Nuzzo* is similar to the facts now before this Court. As will be shown below, Patchin was not fraudulently joined. Thus, this Court does not need to resolve the

question of whether the fraudulent joinder doctrine is available to provide relief from the forum defendant rule. Nevertheless, the Court makes the following two observations. First, the text of the forum defendant rule supports the conclusion that the fraudulent joinder doctrine should apply. The relevant statute provides that a civil action otherwise removable solely on the basis of diversity jurisdiction "may not be removed if any of the parties in interest *properly joined* and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Under the fraudulent joinder doctrine, if there is no possibility that a state court would find that the complaint states a cause of action against a particular defendant, then that defendant should not be considered to have been "properly joined." *See Wesenberg v. Zimmerman*, 2002 WL 1398539, at *3 (D. Minn. June 24, 2002) ("Because the Court finds that the Minnesota Defendants in this case were fraudulently joined, as opposed to being 'properly joined,' the limitation of § 1441(b) does not apply.").

Second, applying the fraudulent joinder doctrine to the forum defendant rule is entirely consistent with the congressional purpose underlying the procedure that allows removal of cases asserting only state claims. By permitting removal of cases when there is complete diversity, Congress sought to allow out-of-state defendants to avoid the potential prejudice resulting from litigating state claims in state court against a local plaintiff. Such a plaintiff is precluded from defeating this congressional purpose by including a nondiverse defendant, against whom the plaintiff has no possibility of stating a claim, along with other defendants against whom the plaintiff can state a claim.

Similarly, a plaintiff should be precluded from defeating this congressional purpose by including a local defendant, against whom the plaintiff has no possibility of stating a claim, along with other defendants against whom the plaintiff can state a claim. In the first situation, the

nondiverse defendant has been fraudulently (or improperly) joined and may be disregarded for purposes of determining whether there is complete diversity. Similarly, in the second situation, the local defendant should be found to have been fraudulently (or improperly) joined and may be disregarded for purposes of considering whether the forum defendant rule requires remand. In either situation, remand would be appropriate.[4] The Court turns next to whether Patchin was fraudulently joined.

## B. Whether Defendant Patchin Was Fraudulently Joined

Defendants make two arguments in support of their assertion of fraudulent joinder. First, Defendants argue that because Patchin was the "primary actor" (or exercised "executive authority") in the decision to fire Ekeya, Patchin cannot be liable for "aiding and abetting" the alleged wrongful termination of Ekeya by Shriners Hospital. This is the argument that a person cannot aid and abet himself. Second, Defendants argue that because Patchin made the decision to fire Ekeya before she engaged in protected activity, neither Patchin nor Shriners Hospital can be liable for retaliation in violation of Oregon law.

---

[4] The question before the Court in this case is different from the circumstance where a forum (or in-state, or resident) defendant has not yet been served but has monitored court filings and quickly removes a case involving complete diversity before being served. The forum defendant may then attempt to avoid the implications of the forum defendant rule by making the text-based argument that there has been no removal by a forum defendant who has been served because the removing forum defendant had not yet been served at the time of removal. This is sometimes referred to as the "resident defendant loophole."

"Federal district courts are divided as to whether the forum defendant rule bars pre-service removal based on diversity jurisdiction." *Deutsche Bank National Trust Co. v. Hagen*, 2015 WL 7720465, at \*4 (D. Haw. Nov. 27, 2015); *Phillips Constr., LLC v. Daniels Law Firm, PLLC*, 93 F. Supp. 3d 544, 550 (collecting and categorizing cases). These cases discuss the conflict between what appears to be the plain meaning of § 1441(b)(2) and the intention of Congress in allowing removal under limited circumstances in the context of a local defendant removing an action based on diversity before that defendant has been served. In the present dispute, however, there is no such conflict because both the text of the statute and its congressional purpose align in supporting the conclusion that the fraudulent joinder doctrine applies to the forum defendant rule.

**1. Whether Patchin can be liable for aiding and abetting the firing of Ekeya**

Ekeya's first claim alleges retaliation against Shriners Portland in violation of Oregon law. Ekeya cites both Or. Rev. Stat. § 659A.030(1)(f)[5] and Or. Rev. Stat. § 659A.199.[6] To state a claim for retaliation under Or. Rev. Stat. § 659A.030(1)(f), a plaintiff must allege that: (1) she has "engaged in protected activity;" (2) she has been subjected to "any adverse treatment" by the defendant; and (3) "[t]here is a causal connection between the protected activity and adverse treatment." Or. Admin. R. 839-005-0125.[7] An employee engages in protected activity when he or she "[e]xplicitly or implicitly oppos[e] an unlawful practice or what that other person reasonably believed to be an unlawful practice." *Id.* The requirements to state a claim for retaliation under Or. Rev. Stat. § 659A.199 are the same as the requirements to state a claim under Or. Rev. Stat. § 659A.030(1)(f). *See Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017) ("To establish a prima facie case of retaliation under ORS 659A.199, the plaintiff must demonstrate that (1) he was engaged in a protected activity; (2) he suffered an adverse employment decision;

---

[5] Under Or. Rev. Stat. § 659A.030(1)(f), it is an unlawful employment practice "for any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so."

[6] Under Or. Rev. Stat. § 659A.199(1), it is an unlawful "employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee . . . for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation."

[7] In *Portland State Univ. Chapter of Am. Ass'n of Univ. Professors v. Portland State Univ.*, 352 Or. 697 (2012), the Oregon Supreme Court noted that Or. Admin. R. 839-005-0125, adopted by the Oregon Bureau of Labor and Industries ("BOLI"), states the prima facie requirements for a retaliation claim under Or. Rev. Stat. § 659A.030(1)(f). 352 Or. at 722 n.17. *See also Bronson v. Moonen*, 270 Or. 469, 476 (1974) ("Administrative rules and regulations are to be regarded as legislative enactments having the same effect as if enacted by the legislature as part of the original statute.").

and (3) there was a causal link between the protected activity and the adverse employment decision.").

Ekeya's second claim alleges that Patchin aided and abetted the unlawful retaliation by Shriners Portland in violation of Oregon law. Ekeya cites Or. Rev. Stat. § 659A.030(1)(g), which provides that it is an unlawful employment practice "for any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so."

Defendants argue that Plaintiff's claim against Patchin for aiding and abetting fails because: (1) it was Hospital Administrator Patchin who, as the "primary actor" or person with "executive authority," made the decision to terminate Plaintiff; and (2) a person cannot aid and abet himself. The first is a factual assertion, and the second is a legal argument regarding the interpretation of § 659A.030(1)(g). The Court addresses the legal argument first.

In *Schram v. Albertson's Inc.*, 146 Or. App. 415, 422 (1997), the Oregon Court of Appeals stated: "[T]he plain text of [§ 659A.030(1)(g)] clearly encompasses both employees and employers and reaches those employees who aid or abet." Neither the Oregon Supreme Court nor the Oregon Court of Appeals, however, have yet explicitly addressed the question of whether a complaint states a claim for aiding and abetting liability under § 659A.030(1)(g) against a "primary actor," or someone with "executive authority," acting for a corporate employer when a complaint alleges that a wrongful employment action has been taken by that person on behalf of the corporate employer. Numerous decisions from the United States District Court, however, have held that such allegations are sufficient to state a claim. *See White v. Amedisys Holding, LLC*, 2012 WL 7037317, at *5-6 (D. Or. Dec. 18, 2012) (Findings and Recommendation), *adopted* 2013 WL 489674 (D. Or. Feb. 7, 2013); *Daniels v. Netop Tech, Inc.*, 2011 WL 127168,

at *3 (D. Or. Jan. 14, 2011); *Demont v. Starbucks*, 2010 WL 5173304, at *5 (D. Or. Dec. 15, 2010); *Chambers v. United Rental*, 2010 WL 2730944, at *2 (D. Or. July 7, 2010); *Gaither v. John Q. Hammons Hotel Mgmt, LLC*, 2009 WL 9520797, at *3 (D. Or. Sept. 3, 2009).

In *White*, U.S. District Judge Anna Brown adopted the Findings and Recommendation of U.S. Magistrate Judge Janice Stewart, who explained that any discipline or termination by a manager is not done to benefit that manager, but is done "on behalf of and within the course and scope of her employment for the employer." *White*, 2012 WL 7037317, at *5. Indeed, a corporate entity can only be liable for unlawful employment actions based on the conduct of employees, officers, or agents acting on behalf of the entity. *Id*. Thus, only where an employee is "legally equivalent to the employer, as in a sole proprietorship, or arguably when exercising 'executive authority' would the employee be aiding and abetting himself or herself." *Id*. Thus,

> if the employee is simply acting on behalf of a separate and distinct
> employing entity, then he or she could well aid, abet, compel or
> coerce that employer's unlawful employment practices. The
> statute's reference to both employers and employees, without
> further qualification, supports this broad reading. This conclusion
> does open the door to claims against a host of employees who, in
> their role as supervisors, take adverse employment actions another
> [*sic*] their subordinates, but such claims are not clearly barred by
> the language in ORS 659A.030(1)(g) or by any Oregon case law.

*Id*.

In response, Defendants rely on two cases decided in the context of summary judgment, not a motion to dismiss. In *Hannan v. Business Journal Publications, Inc*., 2015 WL 9265959 (D. Or. Oct. 2, 2015), U.S. Magistrate Judge Stacie Beckerman wrote in her Findings and Recommendation that summary judgment should be granted in part, dismissing a claim under Or. Rev. Stat. § 659A.030(1)(g) asserted against the publisher of the Portland Business Journal, Craig Wessel ("Wessel"). The plaintiff, Hannan, was a former employee of the Portland Business Journal. Hannan alleged several federal and state claims against both the Portland

PAGE 16 – OPINION AND ORDER

Business Journal and its publisher, Wessel. In recommending the dismissal by summary

judgment of Hannan's claim against Wessel for aiding and abetting age discrimination, Judge

Beckerman accepted Wessel's evidence and argument that because he was the "primary actor" in

the alleged discrimination, he cannot be liable for aiding and abetting. Judge Beckman

explained:

> Hannan presents no evidence to dispute the conclusion that Wessel
> was the decision maker for Hannan's termination. While Hannan
> argues that corporate approval was required to eliminate Hannan's
> job, she does not cite to any evidence. Her allegation is
> undermined by Tierney's unequivocal testimony that no corporate
> approval was required.

*Id*. at *18. This Court adopted Judge Beckerman's Findings and Recommendation. 2015

WL 7720496 (D. Or. Nov. 30, 2015).

In *Peters v. Betaseed, Inc*., 2012 WL 5503617 (D. Or. Nov. 9, 2012), U.S. District Chief

Judge Ann Aiken granted in part the defendants' motion for summary judgment. The plaintiff,

Bruce Peters, had sued his former employer, Betaseed, Inc. and its president, Kurt Wickstrom.

Peters alleged whistleblower retaliation in violation of Or. Rev. Stat. § 659A.199 against

Betaseed and aiding and abetting liability against Wickstrom in violation of Or. Rev. Stat.

§ 659A.030(1)(g). Chief Judge Aiken denied Betaseed's motion for summary judgment, but

granted Wickstrom's motion, explaining that

> the facts of this case differ from those of *Gaither* in one important
> respect: here, Wickstrom was both plaintiff's manager and the
> executive authority of Betaseed, whereas in *Gaither* the manager
> and employer were separate and distinct. To apply *Gaither* under
> the present facts would be to suggest that it is possible to aid and
> abet oneself. Because Wickstrom took action to terminate the
> plaintiff within his role as president of Betaseed, I find that
> plaintiff's claim against Wickstrom for aiding and abetting under
> § 659A.030(1)(g) makes little sense under the plain meaning of the
> statute.

*Peters*, 2012 WL 5503617, at *7.

Ekeya replies that *Hannan* and *Peters* were not correctly decided in light of the plain text of § 659A.030(1)(g) and the decision from the Oregon Court of Appeals in *Schram*. *Schram*, however, does not directly address the issue of whether aiding and abetting liability exists when the operative action is taken by the employer corporation's primary actor or executive authority. Similarly, the text of the statute does not unambiguously resolve this issue. It would assist future litigants and trial courts for an Oregon appellate court to resolve this question in an appropriate case. Because this legal question has not been resolved at the appellate level, it would be inappropriate for this court to conclude that it is "obvious" that Ekeya's aiding and abetting allegations against Patchin fail to state a claim, which is required for a court to find fraudulent joinder. *Allen*, 784 F.3d at 634.

There also is a second and independent ground for rejecting Defendants' assertion of fraudulent joinder at this time. Both *Hannan* and *Peters* were decided on motions for summary judgment. Ekeya, however, has not yet had the opportunity to take discovery from defendants to determine whether there is a genuine issue of material fact regarding whether Patchin truly was the primary actor and executive authority with regard to the decision to terminate Ekeya's employment. At present, several facts appear to point to the conclusion that he was not, notwithstanding his declaration and the declaration of Smith.

Patchin and Smith state that the decision to terminate Ekeya's employment was made by Patchin on July 22, 2016. To be precise, however, Smith stated that she recommended that "we [using the first person plural pronoun] should attempt to get a severance exception and release," and both Patchin and Dietzler-Marihart agreed. Viewing the evidence in the light most favorable to Ekeya, that appears to be the decision that Patchin made on July 22; namely, attempt to get a severance exception from Shriners' headquarters and then a release of claims from Ekeya before

actually terminating Ekeya's employment. This conclusion is further supported by the conditional wording of Smith's July 22 email to Dean, in which Smith wrote: "However, *if this employee* [Ekeya] *stays* it will be very detrimental to a new manager [Dietzler-Marihart] who needs to immediately get her arms around some very important initiatives." ECF 14 at 5. The conditional wording, "if this employee stays," implies that a final decision excluding the possibility of Ekeya staying had not yet been made as of July 22, 2016. As Defendants' counsel acknowledged at oral argument, Dean, working for Shriners in Florida, ultimately did not approve the severance exception and no release was obtained from Ekeya. Further, she continued to work for Shriners' Portland for more than a month after July 22.

In addition, after the incident in August 2016 involving the news photographer and Ekeya's claimed "whistleblowing," a decision was made by Shriners Portland to fire Ekeya, even without a severance exception or release. Patchin does not state that he made *that* decision. Further, on the Employee Counseling Report, dated August 24, 2016, after the box was marked for "discharge," the following sentence was written: "Recommendation to be reviewed by Human Resources before discussing with Employee." ECF 8 at 4. Thus, when viewed in the light most favorable to Ekeya, there is, at this time, at least a factual possibility that Patchin was not the "primary actor" or "executive authority" with respect to the decision in August 2016 to terminate Ekeya's employment without severance and without a release of claims. Because discovery has not yet occurred and because this factual question has not been resolved by summary judgment, it would be inappropriate for the Court to conclude that Ekeya's aiding and abetting claim against Patchin is an instance of fraudulent joinder.

### 2. Whether the decision to fire Ekeya was made before her protected activity

Defendants also argue that Patchin made the decision to fire Ekeya on July 22, 2016, which was before Ekeya engaged in the allegedly protected activity that forms the basis of her

retaliation claims. Defendants argue that if the decision to terminate Ekeya's employment was made on July 22, there can be no retaliation claim maintained against Shriners Portland. Defendants add that if no claim can be stated against Shriners Portland, there can be no claim of aiding and abetting stated against Patchin. Thus, conclude Defendants, this independently shows that Patchin has been fraudulently joined.

The error in Defendants' argument is similar to the error discussed previously. Although a court may consider undisputed facts outside of a complaint when evaluating an assertion of fraudulent joiner, the question of whether Patchin made an unconditional decision on July 22 to fire Ekeya regardless of whether a severance exception could be obtained from Shriners' headquarters or whether a release of claims could be obtained from Ekeya is far from being undisputed. Further, Patchin's declaration is silent on this precise question. Also, Smith's declaration and emails to Dean (with its conditional wording) imply that no such unconditional decision had been made as of July 22. Also, the reference in the August 24, 2016 Employee Counseling Report that the recommendation had "to be reviewed by Human Resources before discussing with Employee," further supports the conclusion that an unconditional decision to terminate Ekeya's employment was not in fact made until after the alleged whistleblowing incident that occurred earlier in August. Because this is at least an open factual question at this time, the record is insufficient to satisfy Defendants' heavy burden of showing fraudulent joinder by clear and convincing evidence.

## C. Plaintiff's Claim for Attorney Fees and Costs

Plaintiff requests an award of attorney fees and costs incurred in bringing her motion to remand. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "A court may award attorney fees when removal is wrong as a matter of law." *Ansley v. Ameriquest*

*Mortg. Co.*, 340 F.3d 858, 864 (9th Cir. 2003). Whether to award fees is within the discretion of the court, *id.*, and there is no presumption for or against awarding fees. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 138 (2005) (noting that "just as there is no basis for supposing Congress meant to tilt the exercise of discretion in *favor* of fee awards under § 1447(c) . . . so too there is no basis here for a strong bias *against* fee awards . . . .") (emphasis in original). The Supreme Court has described how a court should consider this question:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.
>
> In light of these "large objectives," the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.

*Id.* at 140-41 (internal citation omitted). Thus, the question is whether Defendants "lacked an objectively reasonable basis for seeking removal." As discussed above, Defendants bear a heavy burden to show fraudulent joinder with evidence that is clear and convincing.

After reviewing the evidence and considering the parties' written and oral arguments, the Court finds: (1) the recommendation that Patchin appears to have accepted on July 22, 2016 was to terminate Ekeya's employment provided that a severance exception and release of claims could be obtained; (2) the email from Smith to Dean on July 22, 2016, after Smith met with Patchin, reflected conditional wording showing that Ekeya might still remain as an employee if a severance exception and release of claims were not obtained; (3) Shriners did not allow a severance exception and Ekeya did not provide a release of claims; (4) Ekeya's allegedly protected activity occurred in August; and (5) the final and unconditional decision to terminate

Ekeya's employment occurred after Ekeya's allegedly protected activity and was subject to being "reviewed by Human Resources before discussing with Employee." Based on these findings, the Court concludes that: (1) it was not objectively reasonable for Defendants to assert that Patchin had been fraudulently joined; and (2) it was not objectively reasonable for Defendants to remove this action in violation of the forum defendant rule when Patchin is a citizen of the forum state. Plaintiff's request for reasonable attorney fees, therefore, is granted.

## CONCLUSION

Plaintiff's Motion to Remand (ECF 7) is GRANTED, including Plaintiff's request for reasonable attorney fees. Defendants' Motion to Dismiss (ECF 6) is DENIED AS MOOT. This case is REMANDED to the Circuit Court of the State of Oregon for the County of Multnomah. The Clerk of the Court is directed to send the files in this case to the Clerk of the Multnomah County Circuit Court. The Court retains jurisdiction, however, to resolve Plaintiff's petition for attorney fees, if filed not later than fourteen days from the date of this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 10th day of July, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge